## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

RONALD DAVIDSON,

                                      Plaintiff

        - v -                                Civil No. 9:01-CV-0473
                                              (FJS/RFT)

JOHN TALBOT, Auburn Corr. Fac.; RICHARD SMITH,
Auburn Corr. Fac.; M.D. ANTHONY GRACEFFO, Fac. Health
Servs. Dir.; HANS WALKER; GARY HODGES, Deputy Supt.,
Auburn Corr. Fac.; GLEN GOORD, Comm'r of DOCS; M.D.
LESTER WRIGHT, Chief Medical Officer of DOCS; UNITED
HEALTH CARE; ESTATE OF EDWARD DANN; JERRY S.
LEONARD, Chief Medical Officer of DOCS; JOHN DOES
1-10,

                                        Defendants.

---

**APPEARANCES:**                                **OF COUNSEL:**

RONALD DAVIDSON
Plaintiff *Pro Se*
76-A-1166
Shawangunk Correctional Facility
PO Box 700
Wallkill, New York 12589

HON. ELIOT SPITZER                        CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State of New York        Assistant Attorney General
Attorney for Defendants Talbot, Smith, Graceffo,
Goord, and Estate of Dann
Office of Attorney General–Albany Office
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

    Plaintiff Ronald Davidson brings this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging

Defendants violated his civil rights.  Specifically, Davidson alleges that on or about April 6, 1998,

while incarcerated at Auburn Correctional Facility, he was assaulted by Defendants Talbot and

Smith "as payback" for filing complaints and court cases against their co-workers at Auburn.  Dkt.

No. 36, 2d Am. Compl. at ¶¶ 1-4.  Plaintiff also claims that Defendants Walker, Hodges,[1] and Dann

authorized the use of force on Plaintiff and that he suffered back and shoulder injuries as a result of

the attack.  *Id*. at ¶¶ 5-6.  Plaintiff claims that he was denied proper medical care by Defendants

Leonard and United Health Care in deliberate indifference to his serious medical needs.  *Id*.  Finally,

Davidson alleges that he informed Defendants Goord and Graceffo of the denial of medical care and

they failed to intervene on his behalf.  *Id*.

Presently before this Court is a Motion for Summary Judgment  brought by Defendants

Talbot, Smith, Graceffo, Goord, and Estate of Dann, pursuant to FED. R. CIV. P. 56(b).  Dkt. No. 46.

Plaintiff opposes the Motion.  Dkt. Nos. 56-57.[2]  For the reasons that follow, it is recommended

that Defendants' Motion be **granted** and Plaintiff's Second Amended Complaint be **dismissed** in its

entirety.

### I.  BACKGROUND

### A.  Procedural History

Because not all Defendants have been served with process, a recitation of the procedural

history, which is somewhat convoluted, is warranted.  Plaintiff timely commenced this action on or

about April 3, 2001, by filing his verified Complaint with the Clerk of the Court.  Dkt. No. 1,

---

[1] The allegation against Defendant Hodges is included in Plaintiff's First Amended Complaint, but not his Second Amended Complaint.  *See infra* Part II.B.

[2] The Motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Compl.[3]  Plaintiff simultaneously filed an Application to Proceed *In Forma Pauperis.*  Dkt. No. 2.

On May 4, 2001, the Honorable Frederick J. Scullin, Chief United States District Judge,

granted permission for Davidson to proceed *in forma pauperis* and ordered Davidson to file an

amended complaint that complied with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Dkt. No. 4.  In accordance with such directive, Davidson filed an Amended Complaint (Dkt. No. 6),

which was thereafter approved for service on the named Defendants (Dkt. No. 7).  Plaintiff was

warned, however, that the U.S. Marshals Service could not effect service on "the Estate of Edward

Dann" as a Defendant unless Plaintiff first ascertains the identity of an individual authorized to

accept service of process on behalf of the Estate.  Dkt. No. 7 at p. 2.  Thereafter, according to the

Docket Report, on August 21, 2001, Summonses were issued for John Talbot, Richard Smith,

Anthony Graceffo, Hans Walker, Gary Hodges, Glen Goord, Lester Wright, United Health Care,

Jerry S. Leonard, and Edward Dann.

On September 17, 2001, the Court received a letter, dated July 2, 2001, from William M.

Gonzalez, Esq., Deputy Counsel for the New York State Department of Correctional Services

(DOCS), informing the Court that Edward Dann was deceased.  Dkt. No. 8.  That same date, the

Summonses issued for Defendants Dann and Leonard were returned to the Court unexecuted.  Dkt.

Nos. 9 & 10.  On February 1, 2002, Davidson filed a Motion for Injunctive Relief seeking an Order

from the Court directing (1) the U.S. Marshals Service "to use their resources" to locate Defendant

Leonard and serve him with process; (2) Defendants to disclose the full name and address of the

Executor of the Estate of Edward Dann; (3) Defendants to disclose the file number and county of the

---

[3] Since the actions alleged in the Complaint took place on or about April 6, 1998, the Complaint, filed on April 3, 2001, was timely filed, albeit barely with only three days to spare, in accordance with the three-year statute of limitations for actions brought pursuant to 42 U.S.C. § 1983.  *See*, *e.g., Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993).

surrogate court where Dann's Estate is probated; and (4) Anthony Annucci, Esq., DOCS counsel, to accept service of process on behalf of Edward Dann and/or Estate of Edward Dann.  Dkt. No. 14. Plaintiff identified Defendant Leonard as the President and Chief Executive Officer of United Health Care Group, Inc., (United) and further alleged that United provided inmate medical services under a contract with NYSDOCS.  With regard to service on Leonard, Davidson provided an address for United in Anaheim, California, however, service attempted at that address was returned with the notation "not at this address."  Dkt. No. 10.

In light of alleged contractual relationship between United and DOCS, court staff wrote to Mr. Gonzalez, Deputy Counsel for DOCS, requesting assistance in determining whether DOCS had an address on file for Defendant Leonard.  Dkt. No. 16.  Thereafter, on April 25, 2002, this Court granted in part and denied in part Plaintiff's request for injunctive relief.  Dkt. No. 17.  Specifically, with respect to Defendant Leonard, we directed no action be taken until DOCS responded to the Court's letter.  *Id*. at p. 3.  With regard to Defendant Dann, we noted that Defendant Dann deceased prior to the initiation of this suit and that Plaintiff's difficulty in effecting service was due to his inability to properly identify this Defendant.  *Id*. at p. 4.  We nevertheless directed DOCS to inform the Court "whether it has been appointed agent for service of process by the successors or representatives of Edward Dann and, if not, to provide the Court with any information it may have regarding the identity and location of Dann's successors or representatives."  *Id*. at p. 4.  In light of the fact that none of the other Defendants appeared to have been served, we further directed the Marshals Service to advise the Court in writing its efforts to effect timely service on the remaining Defendants.  *Id*. at p. 5.

On May 2, 2002, the Court received a letter from Mr. Gonzalez advising that he has an

address for Jerry Leonard and the Estate of Dann has designated DOCS Counsel's Office as its

agent for service of process.  Dkt. No. 18.  On May 16, 2002, the Court received a letter from

Barbara Wright, Administrative Officer, United States Marshal Service, advising that her office had

never received Summonses, copies of the Complaint, nor USM-285 forms[4] for any Defendant other

than Leonard and Dann.  Dkt. No. 19.  Accordingly, on May 30, 2002, this Court directed that

Summonses be reissued for each Defendant and forwarded to the Marshals Service, along with

copies of the Amended Complaint, for service on the Defendants.  Dkt. No. 20 at p. 2.  We also

provided  specific addresses for service on Defendants Dann and Leonard and further directed

Plaintiff to complete the necessary USM-285 forms for each Defendant.  *Id*. at pp. 2-3.  Summonses

were accordingly reissued by the Clerk of the Court and were returned executed for the following

Defendants: John Talbot, Richard Smith, Glen Goord, and Anthony Graceffo.  Dkt. Nos. 21-24.

The Summonses for Defendants Walker and Hodges were returned unexecuted with a note to

Plaintiff from the Marshals Service indicating that Plaintiff must notify the Service in writing if he

wanted the Service to make further service attempts.  Dkt. Nos. 26-27.

On August 21, 2002, Defendants Talbot, Smith, Graceffo, and Goord, made a Motion for a

More Definitive Statement and a Motion to Strike Part of the Amended Complaint, pursuant to

Rules 12(e) and 12(f) of the Federal Rules of Civil Procedure (Dkt. Nos. 29-30); Plaintiff opposed

the Motion (Dkt. No. 31).  By their Motion, Defendants sought a more definitive description of the

actions Davidson took with regard to exhaustion of administrative remedies.  In ruling on

---

[4] USM-285, entitled "Process Receipt and Return," is the form utilized by the Marshals Service in effectuating service of process.  *See* United States Marshals Service website, *available at* http://www.usmarshals.gov/process/index.html (last visited Mar. 30, 2005).  An inmate seeking to file a civil action in federal court is provided an instruction packet, which contains, *inter alia*, a memorandum from the Clerk of the Court explaining how to fill out the USM-285 form.  *See* United States District Court, Northern District of New York website forms page, *available at* http://www.nynd.uscourts.gov/forms.htm (last visited Mar. 30, 2005).

Defendants' Motion, we found that Plaintiff's pleading was adequate to survive Defendants' Motion, but nevertheless directed Plaintiff to file an amended complaint that alleges in detail the steps he took to exhaust his administrative remedies with respect to all claims.[5]  Dkt. No. 32.

On May 13, 2003, Plaintiff filed his Second Amended Complaint in compliance with our directive.  Dkt. No. 35.  Defendants urged the Court not to accept the Second Amended Complaint as it still suffered from the same deficiency with regard to exhaustion.  Dkt. No. 37.  On June 17, 2003, we reviewed the contents of the Second Amended Complaint as well as Defendants' Objections and determined that the pleading sufficiently complied with our directives and ordered Defendants to file an answer to the Second Amended Complaint.  Dkt. No. 38.  In that same Order, we revisited the issue of service on Defendants Dann and Leonard in light of the fact that the Summonses had still not been returned.  We again directed the Marshals Service to review its files and advise the Court, in writing, of the status such service.  *Id.*  On July 3, 2003, Defendants Talbot, Smith, Graceffo, and Goord filed an Answer to the Second Amended Complaint.  Dkt. No. 39.  On July 7, 2003, the Court received a letter from the Marshals Service indicating that on June 6, 2002, Summonses were received for Defendants Goord, Hodges, Walker, Graceffo, Smith, and Talbot, but not for Dann and Leonard, nor had the Service received USM-285 forms from Plaintiff for Defendants Dann and Leonard.  Dkt. No. 40.  On March 22, 2004, Summonses were reissued by the Clerk of the Court for Defendants Dann and Leonard.  Then, on April 19, 2004, Plaintiff was informed by the Marshals Service that he failed to provide USM-285 forms for "all defendants to be served."  Dkt. No. 45.  On May 28, 2004, the Summonses for Defendants Dann and Leonard were

---

[5] We directed an amendment of the pleading in light of the fact that Plaintiff's opposition to Defendants' Motion set forth in greater detail the steps he took in exhausting his remedies.

returned unexecuted. Dkt. Nos. 47-48. Notably, in filling out the USM-285 forms, Plaintiff

indicated the same address for Defendants Dann and Leonard, that is, DOCS General Counsel, 1220

Washington Avenue, Albany, New York. *Id*. The Court was later advised by Deputy Counsel

Gonzalez that the refusal to accept service on behalf of the Estate of Dann was in error. Dkt. No.

51. As to Defendant Leonard, Mr. Gonzalez reiterated that DOCS has not been designated as an

agent to accept process, and thus, the refusal to accept such service on behalf of Mr. Leonard was

proper. *Id*. Once again, a Summons was issued for Defendant Dann; such Summons was returned

executed on August 16, 2004. Dkt. No. 54.

On September 9, 2003, a Pre-Trial Scheduling Order was issued in this case setting the

following deadlines: Discovery Deadline–January 30, 2004; Motion to Compel Filing

Deadline–February 28, 2004; Motion Filing Deadline–May 30, 2004. Dkt. No. 42. On June 1,

2004, Defendants Goord, Graceffo, Smith, and Talbot filed an untimely Motion for Summary

Judgment, which was opposed by Plaintiff and is now under review. After service had finally been

effectuated on Defendant Estate of Dann, Defendants requested that the Motion for Summary

Judgment be considered submitted on behalf of Mr. Dann's estate as well. Dkt. No. 52. To date,

service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or

United Health Care.

## B. Facts

The following material facts are uncontroverted.[6]  Plaintiff is a New York State prison

---

[6] The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically countered or opposed by Plaintiff. We acknowledge that Defendants have submitted multiple Declarations and Exhibits in support of their Motion. Many of the facts in those Declarations were summarily denied by Plaintiff. As explained more fully below, Plaintiff's conclusory denials of these sworn statements are insufficient to create a genuine issue of material fact. Many of those facts shall be discussed in addressing the sufficiency of Plaintiff's Eighth Amendment claims. *See infra* Part II.C.3.

inmate.  In April 1998, Davidson was housed at the Auburn Correctional Facility, in Auburn, New York, a maximum security prison.  Dkt. No. 46, Charles J. Quackenbush, AAG, Decl. at ¶ 2, Ex. A (copy of DOCS Inmate Locator System Printout for Davidson); N.Y. COMP. CODES R. & REGS. tit. 7, § 100.10.  According to facility log entries, on April 6, 1998, at approximately 11:45 a.m., Davidson and other inmates were taken from the Auburn Special Housing Unit (SHU) to the Walsh Regional Medical Unit and were returned to Auburn at 4:45 p.m.  Dkt. No. 46, Defs.' 7.1 Statement at ¶ 2; E. Scott Talbot Decl., Ex. A-1 (SHU log entries).

Upon Davidson's return to the facility, he was escorted by correction officer (C.O.) Talbot, C.O. Hai, and Sergeant (Sgt.) Valentino from SHU to the E-Block, a general population section of the prison.  Defs.' 7.1 Statement at ¶ 3; Talbot Decl., at ¶ 10, Exs. A-1 & A-2.  Pursuant to standard procedure, Plaintiff's hands were cuffed behind his back during the escort.  *Id.*  At approximately 5:02 p.m., Davidson began complaining of chest pains and requested an emergency sick call, however, such request was denied when a nurse advised E-Block security staff that Plaintiff had just returned from a hospital trip rendering an emergency sick call unnecessary.[7]  Defs.' 7.1 Statement at ¶ 7; Talbot Decl., Ex. A-2; Anthony J. Graceffo, M.D., Decl., Ex. A (Davidson's Ambulatory Health Record (AHR)).  At approximately 5:41 p.m., Defendants Talbot and Smith escorted Plaintiff from the E-Block to the infirmary where he was examined by a facility nurse who addressed his complaints of tightness in his chest.  Defs.' 7.1 Statement at ¶ 9; Talbot Decl. at ¶¶

---

[7] According to the Declaration submitted by Defendant Anthony J. Graceffo, M.D., "Emergency Sick Call" is a specific procedure available to inmates by which they may receive expedited physician/physician's assistant attention for urgent medical conditions.  Initial evaluations are performed by nurses, who determine whether it is necessary to bring a matter to the immediate attention of a physician or a PA.  When necessary, nurses and/or physicians will interrupt their work, including treatment of other inmates, in order to give priority to inmates requiring emergency care. Dkt. No. 46, Graceffo Decl. at ¶ 9.

15-16; Richard Smith Decl. at ¶¶ 15-16; AHR, entry dated Apr. 6, 1998 at 1745 hours).  His blood

pressure was measured and an electrocardiogram (EKG) was performed; Davidson had no

discernible cardiac problem and made no complaints about physical abuse.  *Id*.  At the conclusion of

the medical examination, Talbot and Smith re-cuffed Davidson and escorted him back to E-Block.

Defs.' Decl. at ¶ 13; Talbot Decl. at ¶ 16; Smith Decl. at ¶ 16.  After receiving his evening kosher

meal and medications, Smith and Talbot returned Davidson to his E-Block cell.  *Id*.

Later that day, at approximately 11:50 p.m., Davidson again requested an emergency sick

call.  According to the AHR, C.O. Woodward[8] notified Richard Sharples,[9] the nurse on duty at the

infirmary, that Davidson was again complaining of cardiac pain.  Defs.' 7.1 Statement at ¶ 17;

Graceffo Decl. at ¶ 15, AHR, entry dated Apr. 6, 1998, 2345 hours; Richard Sharples Decl. at ¶ 5.

Woodward also advised the nurse that Davidson had been smoking cigarettes in his cell.  *Id*.  The

nurse stated that Davidson had been seen during the previous shift and his problems had been

addressed, he should stop smoking, and could put in for a sick call in the morning.  *Id*.  On April 7,

1998, shortly after midnight, Davidson was informed that his request for sick call was denied.  In

response, Davidson insisted upon his chest pain complaint and stated that he had been in an

altercation with correctional officers sometime during April 6 and injured his shoulder.  Defs.' 7.1

Statement at ¶ 18; Talbot Decl., Ex. A-2 (log report); Sharples Decl. at ¶ 6.  At approximately 12:30

a.m., Nurse Sharples, accompanied by a sergeant and a correctional officer, responded to

Davidson's cell.  Defs.' 7.1 Statement at ¶ 19; Sharples Decl. at ¶ 7.  According to the log report, at

some point during the examination, Davidson broke the blood pressure cuff, which he kept in his

---

[8] Woodward is not a Defendant in this action.

[9] Sharples is not a Defendant in this action.

possession and refused to give back; hours later, Davidson returned the cuff.  Talbot Decl., Ex. A-2

(log entry).

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . .  the moving party is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine

issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)).  To defeat a motion for summary judgment, the non-movant

must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on

"mere allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also

Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are

ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set

out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir.

1994).  To that end, sworn statements are "more than mere conclusory allegations subject to

disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and

should be treated as evidence in deciding a summary judgment motion" and the credibility of such

statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v.

Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.

1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

*-10-*

and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

We note that Davidson is proceeding herein *pro se* and thus, would normally be afforded special solicitude in construing his claims. However, the Second Circuit has stated that there are circumstances where an overly litigious inmate, "who is quite familiar with the legal system and with pleading requirements," may not be afforded such special solicitude. *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (declining Ronald Davidson, the Plaintiff herein, who was categorized as an "extremely litigious inmate," the benefit of lenient treatment normally afforded *pro se* litigants and thus denying him the opportunity to amend a claim where he failed to properly plead a cause of action); *see also Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001) (citing Second Circuit opinion in *Davidson v. Flynn* and refusing to accord deference Ronald Davidson, who is also the same Plaintiff herein); *Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 670 (S.D.N.Y. 2000) (applying *Davidson* to *pro se* plaintiff who had ten suits pending in district);

*-11-*

*Brown v. McClellan*, 1996 WL 328209, at *1 n.3 (W.D.N.Y. Jun. 11, 1996) (stating that plaintiff's "litigious nature," notwithstanding his *pro se* status, "weighs somewhat against the leniency that is normally accorded"); *Brown v. Selsky*, 1995 WL 13263, at *8 n.1 (W.D.N.Y. Jan. 10, 1995) (denying special solicitude to *pro se* plaintiff who had seven cases pending in the district). As the Second Circuit has noted, Ronald Davidson, the Plaintiff herein is no stranger to the courts and at one point had "at least 30 simultaneously pending suits." *Davidson v. Flynn*, 32 F.3d at 31 (citing *Davidson v. Smith*, 9 F.3d 4, 6 (2d Cir. 1993)). Thus, in light of Davidson's experience in federal court, we find that the special solicitude afforded *pro se* litigants shall not be accorded herein.[10]

---

[10] Davidson has filed twenty (20) lawsuits in this district alone:

(1) *Davidson v. Flynn*, 86-cv-316 (TJM/DEP) (closed on Aug. 15, 2001–Statistically and administratively closed w/o prej.);

(2) *Davidson v. Boulinger*, 87-cv-689 (LEK/RWS) (closed on Feb. 2, 2000–Defs.' Mot. for Summ. J. granted; appeal denied on Aug. 7, 2000, **as indisputably lacking merit as to be rendered frivolous**);

(3) *Davidson v. Dean*, 88-cv-050 (TJM/DS) (transferred to S.D.N.Y. on Nov. 25, 1996);

(4) *Davidson v. Coughlin*, 88-cv-646 (TJM/DEP) (closed on Aug. 15 ,2001–Statistically and administratively closed w/o prej.);

(5) *Davidson v. Riley*, 88-cv-1042 (TJM) (closed on Mar. 18, 1997–Defs.' Mot. to Dismiss granted at trial);

(6) *Davidson v. Leonardo*, 88-cv-1366 (TJM/RWS) (closed on Aug. 4, 2000–Defs.' Mot. for Summ. J. granted; appeal denied on June 17, 2002, aff'd district court judgment);

(7) *Davidson v. McHugh*, 88-cv-1367 (TJM/DS) (closed on July 1, 1994–Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, **as indisputably lacking merit as to be rendered frivolous**);

(8) *Davidson v. Jones*, 88-cv-1368 (TJM/DS) (closed on Aug. 25, 1994–Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, **as indisputably lacking merit as to be rendered frivolous**);

(9) *Davidson v. Cox*, 89-cv-498 (TJM/DS) (closed on Jan. 18, 1994–Defs.' Mot. for Summ. J. granted; appeal denied on May 9, 1994, **as frivolous**);

(10) *Davidson v. Eastman*, 89-cv-1018 (TJM/DS) (closed on July 18, 1994–Defs.' Mot. for Summ. J. granted; appeal dismissed on Nov. 9, 1994);

(11) *Davidson v.Scully*, 90-cv-1187 (CGC/DS) (closed on Sept. 16 ,1992–Defs.' Mot. for Summ. J. granted; appeal denied on Dec. 6, 1993, affirming district court judgment );

(12) *Davidson v. Henderson*, 90-cv-1226 (TJM/DEP) (closed on June 10, 2004–Defs.' Mot. for Summ. J. granted; currently on appeal);

(13) *Davidson v. Greifinger*, 91-805 (FJS/DS) (closed on Dec. 23, 1996–Defts' Mot. for Summ. J. granted; appeal denied on Oct. 29, 1998, affirming district court judgment);

(14) *Davidson v. Coughlin*, 93-cv-272 (TJM/DEP) (closed on Aug. 15, 2001–Statistically and administratively closed w/o prej.);

(15) *Davidson v. Graceffo*, 97-cv-1204 (FJS/DRH) (closed on Aug. 13, 2001–Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 28, 2002, **as lacking merit and no arguable basis in law and future frivolous appeals will be subject to Rule 38 sanctions**);

(16) *Davidson v. Komanecky*, 97-cv-1415 (FJS) (closed on Jan. 22, 2002–**failure to prosecute**; appeal pending);

### B.  Service of Process and Pleading Matters

Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[11] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

In this case, where Davidson has been authorized by the Court to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service was appointed to effect service of process of the Summons and Complaint on his behalf.  *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(2); N.D.N.Y.L.R. 5.1(h).  In accordance with the Local Rules of Practice for the Northern District of New York,

> [i]n the case of a prisoner's civil rights action, or any action where a party has been granted leave to proceed in forma pauperis, the Marshal shall serve the summons and complaint **by regular mail pursuant to Fed. R. Civ. P. 4(c)(2)**.  The Marshal shall file the return or other acknowledgment of service with the Court.  The return shall constitute *prima facie* evidence of the service of process.  If no acknowledgment of service is filed with the Court, the Marshal shall notify the plaintiff and, **if requested by the plaintiff**, shall make personal service as provided in Fed. R. Civ. P. 4.

---

(17) *Davidson v. Hoepner*, 97-cv-1660 (FJS/GJD) (closed on Feb. 26, 2002–Statistically and administratively closed w/o prej.);

(18) *Davidson v. Terrazzini*, 98-cv-1555 (FJS/DEP) (closed on June 25, 2002–Defs.' Mot. for Summ. J. granted; appeal dismissed on Dec. 23, 2004, failure to provide prisoner authorization form);

(19) *Davidson v. O'Connell*, 00-cv-422 (NAM/GS) (closed on Sept. 15, 2003–Defs.' Mot. for Summ. J. granted; appeal dismissed on July 28, 2004, failure to provide prisoner authorization form);

(20) *Davidson v. Talbot*, 01-cv-473 (FJS/RFT) (currently pending).

**In light of Davidson's litigation track record, and the Second Circuit's recognition that Davidson has stepped into that rare status for inmate litigants of being deemed not entitled to "special solicitude," <u>we place both parties on notice that FED. R. CIV. P. 11 sanctions may be applicable, when warranted, for any further litigation pursued by Davidson.</u>**  However, Rule 11 applicability shall not be considered for this case.  *See infra* n.18

[11] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

N.D.N.Y.L.R. 5.1(h) (emphasis added).

To date, service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or United Health Care.  First, with regard to Defendant Hans Walker, Former Superintendent, Auburn Correctional Facility, and Defendant Gary Hodges, Former First Deputy Superintendent, Auburn Correctional Facility, both Summonses were returned unexecuted on August 5, 2002.  Dkt. Nos. 26 & 27.  "[I]n situations where a plaintiff is proceeding in forma pauperis and has been forced to rely on the U.S. Marshals for execution of service, the Plaintiff should not be penalized for the failings of the Marshals."  *Webber v. Hammack*, 973 F. Supp. 116, 121 (N.D.N.Y. 1997) (citing *Romandette v. Weetabix Co.*, 807 F.2d 309, 310 (2d Cir. 1986)). However, in reviewing the case file, we note that accompanying the returned unexecuted Summonses for Defendants Walker and Hodges were notes from the U.S. Marshal, notifying Plaintiff that if he desired further attempts of service for these two Defendants, he must notify the Marshals Service in writing.  *Id*.  There is no indication in the record that Plaintiff made any attempts to effectuate service on these Defendants.  As outlined above, Plaintiff's pleas for court intervention regarding service matters have primarily centered around Defendants Leonard and the Estate of Dann, the latter of which was eventually properly served.  Plaintiff has failed to provide any explanation for his failure to pursue service on Defendants Walker and Hodges, despite the fact that Defendants raised this very issue in their Memorandum of Law in support of their Motion and indicated to the Court that the unserved Defendants should be dismissed.  Thus, the Court has not obtained the requisite jurisdiction over these Defendants.

Usually, when we recommend dismissal of a Defendant due to the Plaintiff's failure to effectuate service, the dismissal is without prejudice.  FED. R. CIV. P. 4(m).  However, in reviewing

the Second Amended Complaint, which replaces all prior pleadings *in toto*, the Court notes that there is no mention of any personal involvement by Defendant Hodges in any of the alleged constitutional violations.[12]  And, as to Defendant Walker, the sole allegation is that he "approved" the use of force.  Dkt. No. 36, 2d Am. Compl. at ¶ 5.  Plaintiff fails to elaborate, either in his Second Amended Complaint or in his Opposition to Defendants' Motion, in what way Defendant Walker approved or sanctioned the alleged use of force, and more importantly, if pursuing an Eighth Amendment violation, why Walker approved the use of force.  Under the authority provided by 28 U.S.C. § 1915(e)(2)(B)(ii), "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).  Since Davidson has failed to adequately allege the personal involvement of Defendants Walker and Hodges in any constitutional violation, we recommend **dismissal** of these Defendants from this lawsuit, with prejudice.

Similarly, with regard to Defendant Lester Wright, Chief Medical Officer at DOCS, service has not been properly effectuated and it is unclear from the record what attempts, if any, were made by the Marshals Service.  However, a review of the Second Amended Complaint reveals that the

---

[12] In Davidson's First Amended Complaint, the sole allegation against Defendant Hodges is that he "authorized" the use of force.  Dkt. No. 6, 1st Am. Compl. at ¶ 11.  However, in that same pleading, Davidson fails to elaborate when and how such authorization occurred.  Furthermore, the allegation of authorization is completely omitted from his Second Amended Complaint.  *Compare* Dkt. No. 6, 1st Am. Compl. *with* Dkt. No. 36, 2d Am. Compl.  Thus, we may properly deem any claims against Defendant Hodges as abandoned.  *See, e.g., Austin v. Ford Models, Inc.*, 149 F.3d 148, 155-57 (2d Cir. 1998).  However, we need not address this abandonment issue in light of Plaintiff's failure to state a cause of action as explained below.

sole allegation against Defendant Wright is that he failed to intervene on Plaintiff's behalf after Plaintiff wrote a letter to Mr. Wright.  Plaintiff does not provide a copy of that letter, nor does he indicate the substance of the letter or when such letter was written.  The fact that Plaintiff may have written a letter does not automatically render the supervisory official responsible for any constitutional violation.  *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. Sep. 22, 1989) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord*, 1998 WL 740782 (S.D.N.Y. Oct. 23, 1998) (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care).  Prison supervisors cannot be deemed personally involved based simply on a response to a complaint.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  Thus, Plaintiff has also failed to state a cause of action against Defendant Wright, who, accordingly, should be **dismissed** from this action, with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

The final two Defendants who have not been served in this action are (1) Defendant Jerry S. Leonard, who Davidson identifies in his First Amended Complaint as the President and Chief Executive Officer of United Health Care Group, Inc., and (2) United Health Care Group, Inc.  There can be no denying, unlike the other non-served Defendants, that Davidson has been particularly diligent in his efforts to have Defendant Leonard served.  *See supra* Part I.A, Procedural History. However, in reviewing the Second Amended Complaint, we note that Davidson omitted Defendant Leonard from both the caption and parties sections of his pleading and the sole allegation against Defendant United Health Care Group is that it, as the contracted managed care provider for DOCS, denied Davidson the magnetic resonance imaging (MRI) ordered by one of the facility doctors.

While, due to the lack of service, the Court has not gained jurisdiction of these Defendants, and putting aside for the moment any concerns the Court has with regard to whether a § 1983 action can be stated against the managed health care provider, we note that Davidson's pleading fails to adequately allege a cause of action against these two Defendants in that he has not met the pleading requirements of an Eighth Amendment violation, specifically, he has failed to allege an objectively serious medical condition as well as a deliberately indifferent state of mind by these Defendants in denying the MRI.  *See infra* Part II.C.3 n.19 (discussing Eighth Amendment Standard).  Since Davidson has failed to allege a sufficiently serious medical condition and a deliberately indifferent state of mind, he has failed to state a cause of action against these Defendants.  As such, we recommend **dismissal** of these Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with prejudice.

### C. Claims Against the Remaining Defendants

The remaining Defendants, who have moved for dismissal of this action, are Defendants (1) John Talbot, Correction Officer (CO) at Auburn, (2) Richard Smith, CO at Auburn, (3) Anthony Graceffo, M.D., Facility Health Services Director at Auburn, (4) Glen Goord, Commissioner of DOCS, and (5) Estate of Edward Dann, decedent former Superintendent of Auburn.

### 1. Exhaustion of Administrative Remedies

Prior to assessing the merits of Plaintiff's claims, we must address Defendants' affirmative defense that Davidson has failed to exhaust his administrative remedies.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies.  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is

similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S.

731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion

requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43

(2d Cir. 2001)).

Here are the following uncontroverted, material facts regarding Davidson's exhaustion of the

claims stated in his Second Amended Complaint, that being, Talbot and Smith's use of excessive

force in retaliation for Plaintiff's use of the grievance system and the general denial of access to

medical care, primarily a MRI and orthopedic consult, for injuries sustained as a result of the

assault. As a general matter, the Court is informed that, in accordance with DOCS Directive 4040,

documentary grievance records are maintained for a period of four years, after which they are

destroyed. Cheryl Parmiter Decl. at ¶ 6; Thomas G. Eagen Decl. at ¶ 3, Ex. A (DOCS Directive

4040, Part VI(J), File Maintenance/Confidentiality ("In order to ensure preservation, it is

Department policy to maintain greivance files for the current year plus the previous four calendar

years."). As standard practice at Auburn, contemporaneous electronic records of grievances are

often held beyond the standard record retention period. Parmiter Decl. at ¶ 6. Those computer files

do not contain complete copies of grievance materials but record key details, including, the

grievance number, name/DIN/housing unit of the filing inmate, a short title summarizing the

primary complaint presented in the grievance, the date the grievance was received, and the level of

appeal the grievance was pursued. *Id.* While many of Davidson's documentary grievances were

destroyed in accordance with Directive 4040, a computerized record of grievances filed between

January 2, 1997 to May 21, 1998 was provided; such record indicates that Davidson filed 182 grievances during that period.  *Id.* at ¶ 8, Ex. A.  During the seven weeks between April 6, 1998, the alleged incident date, and May 26, 1998, the date Plaintiff was transferred to Wende Correctional Facility, Davidson filed eight grievances.  *Id.*  While the facility no longer retains copies of these eight grievances, the Attorney General's Office located in its own archives a copy of a grievance submitted by Davidson which references the alleged assault of April 6th.  The Court shall summarize the substance of such grievance.

On April 30, 1998, Davidson filed Grievance # AUB-29990-98, with the Auburn Inmate Grievance Review Committee (IGRC).  Defs.' 7.1 Statement at ¶ 30; Parmiter Decl. at ¶ 9.  In this grievance, Davidson complains of lack of access to medical care for examination of injuries sustained when he was assaulted on April 6th by unnamed guards.  *Id.*  The Grievance did not identify the individuals who participated in the assault nor did it describe a time or location of the use of force, nor was any action requested to be taken against the alleged aggressors; the only action requested was to see a facility doctor.  Defs.' 7.1 Statement at ¶ 33; Parmiter Decl. at ¶ 12, Ex. B (Grievance).  The Grievance did not allege that staff assaulted Davidson in retaliation for his use of the grievance processs.  Parmiter Decl. at ¶ 14.  The Grievance did not present any allegation that Davidson requested or was being denied a MRI scan on his shoulder(s) for injuries inflicted on April 6th, nor were there any allegations that Davidson requested or was being denied a consultation with or treatment by an orthopedic surgeon in connection with injuries sustained on April 6th.  Parmiter Decl. at ¶¶ 15-16.   Further, to the extent the Grievance referenced an incident alleged to have occurred on April 6th, the Grievance was not timely filed.  Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11; Eagen Decl., Ex. A (DOCS Directive 4040, Part V, Procedures–Grievance to

*-19-*

be submitted within fourteen (14) calendar days of an alleged occurrence).  Nevertheless, the

Grievance was accepted and investigated.  Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11.

Correctional Sergeant Burton was assigned to investigate the Grievance, and with the assistance of

Nurse Coyne, Sgt. Burton examined Davidson's medical record; the medical record revealed no

indication that Davidson experienced any traumatic event on April 6th.  Defs.' 7.1 Statement at ¶ 34;

Parmiter Decl. at ¶ 12, Ex. B.

On May 4, 1998, the IGRC determined that the action requested by Plaintiff, that he be seen

by a physician, had been fulfilled and that there was no objective medical information to

substantiate a use of force.  Defs.' 7.1 Statement at ¶ 36; Parmiter Decl. at ¶ 12, Ex. B.  Davidson

appealed this determination to the facility superintendent; the appeal also did not identify either the

participants or the location of the use of force.  Defs.' 7.1 Statement at ¶ 37; Parmiter Decl. at ¶ 13,

Ex. B.  On May 11, 1998, Deputy Superintendent Hodges sustained the IGRC decision, observing

that there was no medical evidence of an assault by facility staff and that Davidson had seen a

facility doctor on May 4th.  Defs.' 7.1 Statement at ¶ 38; Parmiter Decl. at ¶ 13, Ex. B.  Plaintiff

appealed to the Central Office Review Committee (CORC), stating "I was assaulted by staff on

4/6/98 and my eyeglasses were taken by Sgt. Richard Smith and never returned."  Defs.' 7.1

Statement at ¶ 39; Parmiter Decl., Ex. B.  Again, Plaintiff failed to identify which individuals

assaulted him as well as when and where the assault occurred.  *Id*.  CORC sustained the

superintendent's decision.  Parmiter Decl., Ex. B.

Notably, Plaintiff has not provided this Court with a copy of <u>any</u> grievance filed relative to

the claims stated in his Second Amended Complaint.  Instead, he responds to the Defendants'

affirmative defense with a litany of conclusions in an attempt to demonstrate the general ineptness

of the grievance program.  In his Second Amended Complaint, when asked if he presented the facts

relating to his claims to the grievance program, Davidson writes "Yes, [a]s to denial of medical

care.  As to the assault, I was not required to due to the nature of the attack by guards, the nature of

the grievance system (which can't provide money damages) and federal case law.  In fact, I wasn't

even required to file a grievance over the denial of medical care."  2d Am. Compl. at ¶ 4(b).  Then,

in the "Facts" section of the same pleading, Plaintiff asserts that, in light of his experience as an

IGRC representative and his having filed "thousands of grievances and appeals during [his]

incarceration," along with his extensive knowledge of exhaustion case law, he "knew that [he] had

to file a grievance concerning the instant assault."  *Id*. at ¶¶ 18-27.  Davidson then accuses DOCS of

implementing policies permitting IGRC staff to intentionally "lump" or "bury" assault and

harassment allegations with other grieved issues, thereby, successfully masking such grievances in

an attempt to thwart an inmate's attempt to exhaust administrative remedies.  *Id*.  Davidson also

alleges to have witnessed such burying techniques as well as staff intentionally losing, misfiling, or

destroying grievances alleging assaults.  *Id*.

This Court finds Plaintiff's contradictory contentions to be utterly disingenuous and

incredulous.  If Plaintiff had actually witnessed such "shady dealings" first hand with regard to the

burying or destroying of assault grievances, we must ask why he would not take extra steps to

ensure his assault claims were properly preserved, *i.e.*, why did Plaintiff not make copies of his

grievances?[13]  If Plaintiff was aware of this unspoken policy of destroying grievances alleging staff

assault or harassment, why did Plaintiff fail to take extra steps to ensure that the wrongs against him

---

[13] We acknowledge that an inmate may not possess the funds necessary for copying, however, Plaintiff obviously maintained copies of other grievances filed on other matters since such unrelated grievances were attached to his pleadings and opposition papers.

were vindicated?  Why did Plaintiff, a seasoned *pro se* litigator, fail to lodge a complaint, for example, with the more informal and expedited grievance available when harassment is alleged?[14] Why did self-professed knowledgeable Plaintiff fail to lodge a complaint with DOCS Inspector General's Office, who bears the responsibility to internally investigate matters of employee misconduct, including allegations of unjustified/excessive uses of force by DOCS staff against inmates?[15]

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants.  *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).  Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted.  *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999).  The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined."  *Id.* (citations omitted).  Furthermore, several courts, including this one, have held that there are situations where a defendant may be estopped from asserting this affirmative defense.  *Croswell v. McCoy*, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.) *aff'd in unpublished opinion* No. 01-CV-547, Dkt. No. 50 (Hurd, J.); *Heath v. Saddlemire*, 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct. 7, 2002) (Scullin, C.J.) (affirming this Court's Report-Recommendation and Order in its entirety); *O'Connor v. Featherston*, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (collecting cases from various districts including the 5th and the 8th Circuit explicitly holding such exceptions to the PLRA

---

[14] *See* DOCS Directive 4040, codified at N.Y. COMP. CODES R. & REGS, tit. 7, § 701.11.

[15] *See generally* Kenneth McLaughlin Decl. (indicating that Plaintiff never requested the IG to investigate any use of force on April 6, 1998).

exhaustion requirement).  A prisoner may continue with his suit despite nonexhaustion issues when

> (1) [the] inmate was led to believe by prison officials that his alleged incident was not a grievance matter and assured that his claims were otherwise investigated . . .  (2) an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts . . . and (3) the state's time to respond to the grievance has expired.

*O'Connor v. Featherston*, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (internal quotations and citations omitted).

We find that the Defendants have adequately and astutely, in light of the limited discovery available, carried their burden of proof on their affirmative defense.  Instead of countering the Defendants' claims with regard to the inadequate notice Grievance # AUB-29990-98 provided, Plaintiff attempts to divert the Court's attention from his failure to exhaust his remedies to alleged improper acts of unnamed individuals.  Such tactics, in our mind, are deceitful and obsequious, and are simply inadequate to excuse his failure to follow the rules he proclaims to be extensively acquainted.  We therefore recommend **dismissal** of all claims due to Davidson's failure to exhaust his administrative remedies.  In the alternative, we note that none of Davidson's claims have any merit, and can also be dismissed, as explained below.

### 2.  Personal Involvement

As stated above, it is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

With regard to Defendants Graceffo, Goord and Estate of Dann, Davidson alleges that Dann

authorized the use of force against him and that he advised Goord and Graceffo of his denial of his

MRI and that they failed to intervene on his behalf.  The claims against these Defendants must fail

for the same reason we recommended dismissal of any claims against Defendants Wright, Walker,

and Hodges.  *See supra* Part II.B.  Plaintiff fails to adequately allege in what manner, when, and

why Defendant Dann sanctioned the alleged use of force.  Further, the fact that he may have written

a letter to Goord or had a conversation with Defendant Graceffo does not render such Defendants

liable.

The Second Circuit has stated that a supervisory defendant may have been personally

involved in a constitutional deprivation within the meaning of § 1983 if he:  (1) directly participated

in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a

policy or custom under which unconstitutional practices occurred or allowed such policy or custom

to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful

condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  Pointedly, "mere

'linkage in the prison chain of command' is insufficient to implicate a state commissioner of

corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435

(2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a

high position of authority).  Davidson does not allege the dates he allegedly contacted Goord or

Graceffo nor does he provide any copies of any correspondence he sent to these Defendants.  Nor,

for that matter, has Davidson alleged with sufficient particularity the dates on which he was denied

any medical care, namely, a MRI and/or an orthopedic consult.  Since Plaintiff has not implicated

Goord, Graceffo, and Dann under any of the above theories, and fails to address these claims in his

Opposition to Defendants' Motion, we recommend **granting** Defendants' Motion for Summary

Judgment and **dismissing** Defendants Goord, Graceffo, and Estate of Dann from this lawsuit.

### 3.  Eighth Amendment Claim

Davidson alleges that on April 6 ,1998, Defendants Smith and Talbot, while escorting

Plaintiff at an unspecified time and to an unspecified place, yanked Davidson's handcuffed hands

and arms upwards behind his back and Talbot punched him several times in the rib cage area.[16]  2d

Am. Compl. at ¶¶ 1-3.  Plaintiff further alleges that during the attack, Smith and Talbot told Plaintiff

they were assaulting him as "payback" for his complaints and grievances filed against their fellow

co-workers.  *Id*.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is

applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Robinson v.*

*California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d

Cir. 2003)).  To prove a violation of the Eighth Amendment, the Second Circuit stated that an

inmate must show,

> (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff
> was denied 'the minimal civilized measure of life's necessities,' and (2) that the
> defendant official possessed a 'sufficiently culpable state of mind' associated with 'the
> unnecessary and wanton infliction of pain.'

*Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citing *Farmer v. Brennan,* 511 U.S. 825, 834
(1994)).

Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate"

to the severity of the crime including unnecessary and wanton inflictions of pain which are "totally

without penological justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations

---

[16] Davidson alleges his hands were handcuffed behind his back during the escort and that the assault was
completely unprovoked.  2d Am. Compl. at ¶¶ 2-4.

omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). Courts should consider both the objective and subjective component of an alleged violation. In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury," thus, the seriousness of the injury is relevant to the inquiry, but does not end it. *Davidson v. Flynn*, 32 F.3d at 29 n.1 (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4). With regard to the subjective component, the court should consider whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. Further consideration of the circumstances surrounding the alleged misconduct may be warranted. As the Court in *Hudson* explained, "[i]n determining whether the use of force was wanton and unnecessary, it may . . . be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks and citations omitted).

By Declarations, both Talbot and Smith adamantly deny ever using force against Davidson,

that is, beyond ordinary escort-related handcuffing.  Talbot Decl. at ¶ 8; Smith Decl. at ¶ 10.  In

support of their defense, Talbot and Smith attached to their Declarations facility logs for SHU and

E-Block on April 6-7.  Because Davidson failed to specify a time when the alleged attack took

place, or even the circumstances surrounding the attack, *i.e.*, where he was escorted to, the

Defendants were at somewhat of a disadvantage in properly defending themselves against Plaintiff's

unsupported and unsubstantiated claims.  The facility logs help paint a clear picture for this Court of

the events as they transpired on April 6th, as set forth in the facts section above.  *See supra* Part I.B,

Facts.  Plaintiff contends that he was "forcibly removed from Auburn's SHU" on April 6th,

purportedly by Defendants Talbot and Smith.  2d Am. Compl. at ¶¶ 2-4.  However, as indicated by

the facility logs, Plaintiff was escorted from SHU, along with other prisoners, at approximately

11:45 a.m. and was taken to Walsh Regional Medical Center; neither Defendant Talbot nor Smith

escorted Plaintiff from SHU that morning.  Talbot Decl. at ¶ 9, Ex. A-1(SHU log); Smith Decl. at ¶

11, Ex. A-1 (SHU log).  In fact, on that date, Talbot worked a 3:00 p.m. - 11:00 p.m. shift and,

therefore, wasn't even present in the facility at the time this escort took place.  Talbot Decl. at ¶ 9.

Later that day, upon Plaintiff's return to the facility at 4:45 p.m., Talbot, whose shift had begun,

along with two other officers escorted Plaintiff to the E-Block; facility logs indicate that Smith was

not present during that escort.  Talbot Decl. at ¶ 10, Exs. A-1 & A-2.  Facility logs further indicate

that Davidson made no complaints about a use of force against him during any of the escorts that

day.

      The first time Talbot and Smith escorted Plaintiff was at 5:41 p.m., when, after his relentless

complaints about chest pains, they brought him from E-Block to the infirmary.  Talbot Decl. at ¶ 15,

Ex. A-2; Smith Decl. at ¶ 15, Ex. A-2.  At 5:45 p.m., Davidson was examined by a facility nurse

and did not complain about any use of force, nor did he exhibit any traumatic injury. Graceffo Decl., Ex. A (AHR, entry dated Apr. 6, 1998, at 1745 hrs). Talbot and Smith then escorted Plaintiff back to E-Block, and then, after Davidson received his evening meal and medications, they escorted him back to his cell at approximately 6:14 p.m. Talbot Decl. at ¶ 16, Ex. A-2; Smith Decl. at ¶ 16, Ex. A-2. Log entries reflect no complaint of physical mistreatment or traumatic injury. Talbot Decl., Ex. A-2. Plaintiff's personal property was brought to him at 8:15 p.m. and 8:35 p.m.; Davidson made no complaints of physical mistreatment or traumatic injury. Smith Decl. at ¶¶ 18-19, Ex. A-2. In fact, it was not until after midnight on April 7th, after again being denied access to emergency sick call, that Davidson for the first time complained of abuse by security staff. Talbot Decl. at ¶ 20; Ex. A-2.

In further support of their contentions that no assault occurred, Defendants supplied Declarations of various non-parties, who have no stake in this particular litigation, attesting to the general procedures of the facility, which must be undertaken when staff impose the use of force, *i.e.* reports and investigations lodged to ensure that only the amount of force necessary was used. *See generally* Laurence M. Cheney, Liason Officer at Auburn, Decl. at ¶¶ 3-4, Ex. A (indicating that no "Use of Force" reports involving Davidson were generated for events occurring on April 6, 1998, however, a Use of Force incident did occur on April 7, 1998, when Davidson was being escorted to the Mental Hygiene Unit and began kicking the glass cover of a fire alarm panel; none of the Defendants were involved in that incident); Joseph Bellnier, Deputy Superintendent for Security at Auburn, Decl., Ex. A (explaining DOCS Directive 4944, which sets forth the policies and procedures following a use of force against an inmate); Timothy Costello Decl., Ex. A (describing April 7th incident during his escort of Davidson and use of force against Davidson).

To further bolster their claims that Davidson had not been the victim of an assault by staff on April 6th, Defendants offer the Declaration of Nurse Richard Sharples who responded to Plaintiff's midnight complaints.  Sharples' refreshed his recollection of the events by reviewing Davidson's AHR as well as nurses' notes for April 6-7, 1998.  Sharples Decl. at ¶ 4.  Shortly after midnight, on April 7th, Sharples and a staff sergeant responded to Davidson's complaints that he had been assaulted by security staff.  *Id*. at ¶ 6.  Sharples arrived at E-Block at approximately 12:30 a.m.  *Id*. at ¶ 7.  Prior to making his presence known to Davidson, Sharples spent some time observing Davidson in his cell.  *Id*.  Sharples stood by the officers' desk, located approximately ten to twenty feet from Davidson's cell, and had an unobstructed view of Davidson through his cell door.[17]  *Id*. Sharples observed Davidson walk, bend his body, and move his limbs without difficulty.  *Id*. Sharples then made his presence known and conducted a physical examination of Davidson without entering the cell.  *Id*. at ¶ 8.  Davidson described his subjective complaints of pain in his knee, right neck, and left shoulder, yet, he was able to remove his shirt without complaint or apparent physical disability.  *Id*. at ¶ 9.  Davidson complained of lower back pain but was able to bend over smoothly without apparent spasms.  *Id*.  After examining Davidson's body, Sharples could not detect any evidence of trauma injuries.  *Id*.  With Davidson's arm extended through the cell door, Sharples measured his blood pressure with a sphygmomanometer, and checked his heart rate and respiration with a stethoscope.  *Id*. at ¶ 10.  At the conclusion of the examination, Davidson requested that his blood pressure be read again from his other arm, which he extended through the opening of the cell door.  *Id*.  As Sharples started to comply, Davidson grabbed hold of the blood pressure cuff and tried

---

[17] Sharples explains that the cell door consisted of rows of vertical steel bars running from the floor to the upper jamb, approximately seven feet high, the cell was lit from within, the lights in the gallery were on, and there was no sheet or anything else hanging from the inside of the door.  Sharples Decl. at ¶ 7.

to yank it into his cell and broke the equipment.  Notably, Davidson's mobility, range of motion, and limb strength were unimpaired.  Davidson retained the blood pressure cuff, but ultimately returned it to security staff.  *Id.*; *see also* Talbot Decl., Ex. A-2 (log entries indicating Davidson kept cuff and later returned it).

In support of his allegations, and in countering Defendants' sworn testimony and documentary evidence, Plaintiff essentially avers that the entire staff covered up the assault by not properly documenting the multiple complaints he lodged that day.  We find that such statements are insufficient to create a genuine issue of material fact.  The Court has closely examined the facility logs and notes the great details included therein.  If such a conspiracy existed, then how does Plaintiff account for the entry indicating his complaints of staff abuse and the immediate response by all staff.  Why was that entry not similarly obscured?

Once a moving party has met its burden of showing that no triable issues of fact exist, the non-moving party "must come forward with **specific** facts showing that there is a genuine issue for trial."  *Young v. Corbin*, 889 F. Supp. 582, 284 (N.D.N.Y. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) (emphasis added)).  "A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Young*, 889 F. Supp. at 584 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, once the moving party establishes a *prima facie* case demonstrating an absence of a genuine issue of material fact, "the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-moving party, [and t]he motion will not be defeated by a non-movant who raises merely a '**metaphysical doubt**' concerning the facts or who offers only **conjecture or surmise**."  *Young*, at 584 (quoting *Matsushita*, 475 U.S. at 586)

*-30-*

(emphasis added).

We find Plaintiff's feeble attempts to create an issue of fact by generally "attesting" to the falsity of all sworn statements submitted by the Defendants and other non-parties to be unsavory. Again, even if we were to believe that an assault took place, we cannot overlook the fact that Plaintiff failed to ensure that his claims were properly investigated, whether through the various avenues available in the facility, DOCS, or even the Inspector General's Office. Plaintiff's failure to protect his rights in this instance, when he has clearly done so in so many other instances, certainly weighs against his claims and exposes what can only be categorized as a disingenuous and a utter waste of judicial resources.[18]   Without making any credibility determinations, which this Court

---

[18] Again, we put the parties on notice that should this prisoner continue to bring such frivolous actions, he may be subject to Rule 11 sanctions as that rule is in no way limited, by its very terms, to attorneys admitted to the bar. *See Cavallary v. Lakewood sky Diving Ctr.*, 623 F. Supp. 242, 245-46 (S.D.N.Y. 1985) (*pro se* plaintiff not immune from Rule 11); *Taylor v. Prudential Bache Sec., Inc.*, 594 F. Supp. 226, 228-29 (N.D.N.Y.), *aff'd without opinion*, 751 F.2d 371 (2d Cir. 1984) ("oppressive" and "unfounded" conduct by *pro se* plaintiff warranted sanctions in bringing "frivolous" and "spiteful" action); *see also McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (noting that in spite of *pro se* litigants being held to a less stringent standard, all litigants, including *pro ses*, have an obligation to inform themselves of and comply with court orders and procedural rules); *Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995) (same); *Young v. Corbin*, 889 F. Supp. 582, 585-86 (N.D.N.Y. 1995) (imposing minimal Rule 11 sanctions on *pro se* inmate plaintiff and barring commencement of future actions until the fine is paid).

Rule 11 states, in pertinent part:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney **or unrepresented party** is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

While the Court could have initiated Rule 11 sanctions for this action on its own initiative, we decline to do so since at this juncture fair notice of such intent has not been provided. However, considering Plaintiff's admissions of filing more than one thousand claims, which we consider to be sheer braggadocio, the Court's personal knowledge of more than one

*-31-*

acknowledges is better left to the trier of fact, we find that Defendants have more than met their

burden in moving for summary judgment on the objective prong alone, in that Plaintiff cannot show

that any assault took place, and his Eighth Amendment claims should be **dismissed** as frivolous.[19]

### 4. *Retaliation Claims*

The Second Circuit has made it clear that an inmate has a substantive due process right not

to be subjected harassment in retaliation for the exercise of a constitutional right such as petitioning

the government for redress of grievances.  *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995);

*Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988).  To state a First Amendment claim for

retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected

activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal

connection between the protected speech and the adverse action in that the alleged conduct was

substantially motivated by the protected activity.  *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.

2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *see also Gayle v. Gonyea*, 313

F.3d 677 (2d Cir. 2002) (alleging false disciplinary report); *Hendricks v. Coughlin*, 114 F.3d 390

(2d Cir. 1997) (alleging retaliatory transfers).  The Second Circuit has noted that retaliation claims

---

hundred claims filed in the New York State Court of Claims by the Plaintiff, the Second Circuit's further recognition of
his overly litigiousness in federal court based upon his contemporaneous filing of over thirty federal actions, as well as
the Second Circuit's multiple admonitions to this Plaintiff in bringing frivolous appeals, the probability of many if not
all of his legal actions are meritless and, as such, this Plaintiff is particularly deserving of notice of possible future Rule
11 sanctions for frivolous litigation.  *See supra* note 10.  Davidson above all has stretched judicial resources beyond
justification with his vexatious lawsuits.

[19] Due to Plaintiff's failure to properly serve Defendants Leonard and United, we need not address Plaintiff's
claims of being denied access to medical care.  In any event, because Plaintiff has failed to give a proper framework for
precisely when his access to medical care was inhibited, we cannot adequately address such claims.  Further, even if we
did have such information, we note that Plaintiff's Eighth Amendment claim based on the denial of medical care would
fail since he cannot establish a serious medical condition.  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)
(quoting *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994) (stating that a medical need is serious if
it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'").  Plaintiff has failed to provide
any documentation evidencing his alleged shoulder injury was a condition of urgency or even caused him extreme pain.

are prone to abuse, therefore courts should examine such claims "with skepticism and particular care." *Bennett*, 343 F.3d at 137; *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

In addressing the first prong of the retaliation analysis, we note that Plaintiff's claims falls miles short of adequately stating a retaliation claim. Davidson alleges he was attacked as retaliation for filing grievances, a constitutionally protected activity, however, he fails to allege when such grievances were filed. Thus, from the outset, this Court has no way of assessing the strength or validity of such claims. We therefore recommend **granting** Defendants' Motion for Summary Judgment as to any retaliation claims.

### 5. *Request for Further Discovery*

In his opposition to Defendants' Motion, Plaintiff requests that the Motion be held in abeyance pending further discovery. Plaintiff's request for more discovery to oppose the Motion is **denied**. Plaintiff has had ample time for discovery in this matter. When making such a request in opposition to a motion for summary judgment, the Second Circuit requires an affidavit sufficiently detailing:

1)     the nature of the uncompleted discovery;
2)     how the facts sought are *reasonably expected* to create *genuine issues* of material fact;
3)     what efforts the affiant has made to obtain those facts; and
4)     why those efforts were unsuccessful.

*Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994); FED. R. CIV. P. 56(f).

Plaintiff's purported Rule 56(f) affidavit falls short of establishing the above factors. In fact,

Plaintiff only seeks more discovery to provide proof that "grievances submitted by prisoners were frequently 'lost' or 'consolidated' by [the Inmate Grievance Supervisor]." Dkt. No. 56, Pl.'s Aff. at ¶ 3. The Court considers such issue to be collateral to the constitutional claims at hand, namely, retaliation, excessive force, and denial of medical care.[20] Moreover, limited discovery that may possibly address the issue of exhaustion would not shed any further light on the merits of his constitutional claims, which the Court has already found to be frivolous and lacking merit.

### III.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants Wright, Walker, Hodges, Leonard, and United Health Care, be **dismissed** from this action, **without prejudice**, in accordance with FED. R. CIV. P. 4(m), due to Plaintiff's failure to timely effectuate service, or in the alternative, that such Defendants be **dismissed** from this action, **with prejudice**, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), due to Plaintiff's failure to properly state a cause of action; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be **granted** and Plaintiff's entire Second Amended Complaint be **dismissed without prejudice** due to Plaintiff's failure to exhaust his administrative remedies; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be **granted** and Plaintiff's entire Second Amended Complaint be **dismissed with prejudice as frivolous**, in light of Plaintiff's failure to allege any personal involvement of Defendants Graceffo,

---

[20] We note that Plaintiff has not detailed what efforts he made to obtain discovery not only with regard to exhaustion issues but also with regard to the substance of his constitutional claims. We further note that, as evidenced by AAG Quackenbush's Declaration, and Exhibit attached therewith, Plaintiff has failed in his obligation to cooperate in good faith in discovery thereby stymying Defendants' efforts to uncover specific facts underlying Plaintiff's claims.

Goord, and Estate of Dann, and due to his failure to state a claim for retaliatory excessive force

against Defendants Smith and Talbot; and it is further

      **ORDERED**, that Plaintiff's request to hold Defendants' Motion in abeyance pending further

discovery is **denied**; and it is further

      **ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing

report to the **U.S. DISTRICT JUDGE** assigned to this case. Such objections shall be filed with

the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT TO THE U.S. DISTRICT

JUDGE WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v.

Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health and Human Servs.* 892 F.2d 15 (2d

Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).


SO ORDERED

Dated: March 31, 2005
      Albany, New York



RANDOLPH F. TREECE
United States Magistrate Judge